CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 16 2015

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PIERRE A. RENOIR, | ) CASE NO. 7:15CV00026 |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION** |
| LESLIE FLEMING, et al., | ) By: Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendants. | ) |

Pierre A. Renoir, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. Renoir alleged that after he suffered a broken arm at Keen Mountain Correctional Center in September 2014, prison officials failed to provide him any medical treatment for four months to cover up Renoir's actual innocence on criminal charges of child sexual assault. As discussed in more detail infra, Renoir is a "three striker" under the provisions of 28 U.S.C. § 1915(g), and must therefore establish that he is in imminent danger of severe physical injury in order to avoid the payment of a full filing fee as a condition of the filing of this civil action. Renoir asserted that his ongoing pain from his injury qualified as imminent danger of physical harm so as to allow him to proceed with his lawsuit absent prepayment of the fee. See 28 U.S.C. § 1915(g). Based on evidence now in the record, however, the court finds that Renoir was not and is not now in imminent danger of physical harm as alleged, and therefore, the court will deny his request to proceed in forma pauperis under § 1915(g) and dismiss the action on that basis. In the alternative, the court will dismiss the action without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), as frivolous.

# I

These are the facts relevant to the imminent danger analysis, taken in the light most favorable to Renoir. On Saturday, September 13, 2014, while exiting an elevated shower in leg irons, with hands cuffed behind his back, Renoir slipped on the step and landed with his full body weight on his arm on the edge of the concrete step. He alleges that he broke his arm and wrist, injured his spine, and received "deep lacerations in [his] arm requiring sti[t]ches." (Compl. 4, ECF No. 1.) When a nurse came to see him back at his cell thirty minutes later, Renoir told her that his arm and wrist were broken. He demanded to see a doctor immediately and be x-rayed. The nurse told him that he would not see the prison doctor until Tuesday, but offered to take Renoir to the medical unit, so she could clean and bandage an injured area she noted on his hand. She did not note any bleeding. Renoir would not sign the required form consenting to this treatment, said he refused to wait four days for medical care, and demanded to go to a hospital. Two witnesses signed a form, stating that Renoir had refused the treatment the nurse had offered, and no one provided him treatment.

In January 2015, Renoir filed this lawsuit,[1] alleging that during the four months after the fall, he had asked for and received no treatment for the broken arm and wrist and was still suffering pain, particularly when writing. As relief in the lawsuit, among other things, Renoir seeks x-rays and treatment of his injuries.[2]

Liberally construing these allegations, the court found that Renoir had alleged facts on which he could conceivably show that he was in "imminent danger of serious physical injury" at

---

[1] The United States District Court for the Eastern District of Virginia received and docketed Renoir's complaint on January 14, 2015. Because the events at issue in the lawsuit occurred in this district, however, by order entered January 26, 2015, the case was transferred to this court.

[2] Renoir alleged that prison officials denied him medical care purposely to cover up for the fact that he now has evidence of his innocence and can prove that he was framed on charges of sexually abusing his daughter.

2

the time he filed the complaint, as required under § 1915(g), based on prison officials' alleged refusal to provide treatment for four months for a broken arm. Therefore, the court directed the Office of the Attorney General ("OAG") to file a prompt response on this issue. With its response, the OAG submitted evidence that Renoir had refused medical treatment offered to him after he injured his arm, and that he had thereafter failed to follow procedures required for inmates to request medical treatment. Renoir responded, insisting that he had filed written sick call requests and made verbal requests for medical care in the weeks after his fall, but was not provided any treatment.

Noting the parties' factual disputes about Renoir's alleged requests for treatment, on March 5, 2015, the court ordered that the matter would be set for a hearing on plaintiff's assertion that he was in imminent danger of physical injury. The order also stated, however, that "in lieu of a hearing, defendants could submit evidence by way of an affidavit or declaration from a medical specialist who has examined plaintiff and reviewed objective evidence, and determined that plaintiff is not in imminent harm based on a denial of medical treatment for his arm."[3] (Order Mar. 5, 2015, ECF No. 25.)

In response to this order, the OAG submitted the affidavit of Dr. C. Santos, an orthopedic specialist practicing in Richlands, Virginia. Dr. Santos stated that he took an x-ray of Renoir's arm on March 11, 2015. The x-ray reflected that Renoir had "an old healed fracture of the distal radius and ulna which appeared to be in good alignment." (Santos Affid. ¶ 2, ECF No. 35-1.) The x-ray also reflected "a possible scaphoid fracture which is a wrist bone fracture caused by a fall on an outstretched hand." (Id.) For further evaluation of this possible injury, Renoir

---

[3] In response to this order, Renoir complained that the court had ignored his alleged spinal injury. Other than complaining of generalized pain, however, Renoir's complaint did not mention any specific, ongoing symptoms related to his spine.

3

underwent a CT scan on March 11, which indicated that his wrist was not fractured. Dr. Santos stated that the only treatment presently indicated for Renoir's injuries is "occupational therapy to improve pain and range of motion of wrist." (Id. ¶ 4.) Dr. Santos stated, "Mr. Renoir is not in imminent danger of harm based on a denial of medical treatment for his arm." (Id.)

Renoir has moved for summary judgment, appointment of counsel, and a hearing, based on the evidence that he did suffer a broken bone in his arm in the past and has had no treatment for it at Keen Mountain. Renoir has also complained that Dr. Santos, who often sees VDOC inmates for orthopedic problems, was biased in his medical judgments.

## II

The Prison Litigation Reform Act of 1995 substantially amended the in forma pauperis statute, 28 U.S.C. § 1915. The purpose of the Act was to require all prisoner litigants suing government entities or officials to pay filing fees in full, either through prepayment or through installments withheld from the litigant's inmate trust account. § 1915(b). Section 1915(g) denies the installment payment method to prisoners who have "three strikes" — those prisoners who have had three previous cases or appeals dismissed as frivolous, malicious, or for failure to state a claim, unless the three-striker inmate shows "imminent danger of serious physical injury." § 1915(g).

Renoir has brought such actions or appeals on three or more prior occasions. See, e.g., Renoir v. Governor of Virginia, 755 F. Supp. 2d 82 (D. D.C. 2010) (dismissed under § 1915(g)); Renoir v. Davidson, No. 08-cv-333, 2008 WL 2944893, at *1 (E.D. Wisc. 2008) (noting accumulation of three "strikes"); Renoir v. Brown, No. 07CV00166, 2007 WL 1052477, at *1 (W.D. Va. 2007) ("Renoir has 'three strikes' under § 1915(g)."); Renoir v. Ray, 7:06CV00164, 2006 WL 840313 (W.D. Va. 2006) (dismissed under § 1915(g), with finding that allegations also

4

did not state any actionable § 1983 claim); and Renoir v. Wilson, Civil Action No. 7:99CV00810 (W.D. Va. 1999) (dismissed as frivolous).[4] Accordingly, Renoir may proceed in forma pauperis (without prepayment of the filing fee) only if he can show that he faces imminent danger of serious physical injury. § 1915(g).

Courts have held that the "imminent danger" exception to § 1915(g)'s "three strikes" rule must be construed narrowly and applied only "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate" to the alleged official misconduct. Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002). To satisfy the imminent danger element, Renoir must allege facts showing that he was in imminent danger at the time the complaint was filed; allegations that the prisoner has faced imminent danger in the past are insufficient to trigger the exception to section 1915(g). See Abdul-Akbar v. McKelvie, 239 F.3d 307, 314 (3d Cir. 2001). The imminent danger exception in § 1915(g) "focuses on the risk that the conduct complained of threatens continuing or future injury, not whether the inmate deserves a remedy for past misconduct." Id. (quoting Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003)). Numerous courts have concluded that where a three-striker inmate's allegations reflect that he has had access to medical care and simply disagrees with the opinions of the medical personnel who have examined him, he fails to satisfy the imminent danger requirement of 28 U.S.C. § 1915(g). See, e.g., Renoir v. Mullins, No. 7:06CV00474, 2006 WL 2375624 (W.D. Va. Aug. 15, 2006) (finding disagreement with diagnoses and prescribed treatment is not imminent danger of serious physical harm).

---

[4] See also Renoir v. Hamilton, Case No. 7:06CV00677 (W.D. Va. Dec. 6, 2006) (ECF No. 9, 15), appeal dismissed, No. 06-8041 (4th Cir. Jan. 22, 2007). The Fourth Circuit found that Renoir had three strikes under § 1915(g) and required him to prepay the appeal fee (ECF No. 15); when he failed to pay, the case was dismissed for failure to prosecute.

5

Based on Dr. Santos' affidavit, the court finds that Renoir has not demonstrated imminent danger of physical harm as required to proceed under § 1915(g) without prepayment of the filing fee. Dr. Santos, in his medical judgment as an orthopedic specialist, based on an x-ray and CT scan and his own examination of Renoir's arm, found that Renoir does not have a broken wrist. He also found that while Renoir had suffered a fracture of his arm at some time in the past, it was healed and in good alignment in early March. Dr. Santos did not find any corrective treatment, such as surgery or a cast or brace, to be necessary, and the only treatment he recommended was occupational therapy. Renoir's conclusory assertion that Dr. Santos was somehow biased because the VDOC hires him to treat its inmates on occasion is nothing more than self-serving speculation, insufficient to contradict the OAG's evidence that Renoir is not in imminent danger of physical harm related to his claims.

In addition, Renoir's own submissions and allegations indicate that his own actions, rather than any prison official's decision, have prevented him from receiving medical care for his September 2014 injuries. He refused to consent to the treatment the nurse offered to him, which included an examination by Keen Mountain's doctor early the next week. Similarly, copies in the record of his later written complaints and grievances about the incident indicate that rather than seeking evaluation and treatment of his injuries, Renoir repeatedly demanded to be taken to a hospital for an x-ray. Finally, he offers no evidence that he has followed required procedures to request that the Keen Mountain medical staff provide the type of treatment Dr. Santos recommended in March to improve mobility and reduce pain.

For the stated reasons, the court concludes that Renoir is not in imminent danger of physical harm related to his claims. Because he has three "strikes," has not prepaid the required

6

filing costs for this case, and does not qualify for the prepayment exception of showing imminent danger, the court will summarily dismiss the action under § 1915(g).

In the alternative, Renoir's complaint as a whole alleges a claim that must be dismissed as factually frivolous. The court must dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1). A "frivolous" claim is one that "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989) (interpreting "frivolous" in former version of 28 U.S.C. § 1915(d)).

Renoir alleges that VDOC officials did not provide him with medical treatment after the September 2014 fall as a "cover-up" of the fact that he has recently "discovered final proof of 100% innocence of all [his] charges and evidence [that he] was purposely framed by Virginia" of sexually assaulting his daughter.[5] (Compl. 5A.) He demands a trial and seeks to obtain evidence of medical treatment provided to his children in 1996 in Colorado and court documents and transcripts from a court in Ft. Collins. The court's statutory authority to summarily dismiss malicious and frivolous complaints includes "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless" or which describe "fantastic or delusional scenarios." Neitzke, 490 U.S. at 327-28. The court is satisfied that Renoir's "cover-up" claim falls squarely in this category of claims and, therefore, will summarily dismiss it without prejudice under § 1915A(b)(1) as frivolous.

---

[5] Even assuming Renoir's claim of actual innocence has any legitimacy, it must be filed as a Petition for a Writ of Actual Innocence under state law and is not a cognizable claim under 42 U.S.C. § 1983. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (finding § 1983 was intended to protect only federal rights guaranteed by federal law).

7

## III

In conclusion, because Renoir has at least three "strikes" under § 1915(g), has not prepaid the filing costs, and has not demonstrated that he is in imminent danger of physical harm, the court denies Renoir the opportunity to proceed in forma pauperis and summarily dismisses the action under § 1915(g) without prejudice. In the alternative, because Renoir's allegations and submissions indicate that his overall claim of a state-wide cover up of his allegedly wrongful conviction rests on a fantastic and delusional scenario, the court will summarily dismiss the complaint without prejudice under § 1915A(b)(1) as frivolous. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to the Office of the Attorney General of Virginia.

ENTER: This 16th day of April, 2015.

                                                                                Chief United States District Judge